UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

LEONID YAROSLAVSKIY,

                        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

**NOT FOR PUBLICATION**
**MEMORANDUM AND ORDER**

20-cv-4853 (LDH)

---

LaSHANN DeARCY HALL, United States District Judge:

    Leonid Yaroslavskiy ("Plaintiff") appeals an Administrative Law Judge's ("ALJ") final decision dated November 6, 2019, denying his claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"). Plaintiff moves pursuant to Rule 12(c) for judgment on the pleadings reversing the Commissioner's decision and remanding for additional proceedings. (*See* Pl.'s Mem. L. Supp. Mot. J. Plead. ("Pl.'s Mem."), ECF No. 22.) Defendant cross-moves pursuant to Rule 12(c) for judgment on the pleadings affirming the Commissioner's decision. (*See* Def. Mem. L. Supp. Cross-Mot. J. Plead. Opp. Pl.'s Mot. J. Plead. ("Def.'s Mem."), ECF No. 24.)

    As set out below, Plaintiff's motion is GRANTED, and Defendant's motion is DENIED. The case is REMANDED for further proceedings consistent with this memorandum and order.

## BACKGROUND

### I. Plaintiff's Evidence

    Plaintiff was born on July 2, 1992, in Vinnytsia, Ukraine. (Admin. Tr. ("Tr.") at 221, 813, ECF No. 10.) He is currently 29 years old. When he was born, Plaintiff's neck was

1

wrapped by his umbilical cord. (*Id.*)  As a result, Plaintiff was diagnosed with hydrocephalus at birth. (*Id.*)  Plaintiff's family immigrated to the United States in 1995. (*Id.* at 772.)  In the United States, Plaintiff was found to be a child who was disabled in December 1995. (*Id.* at 414).  When he turned 18, Plaintiff's eligibility was redetermined under the standards for disabilities in adults, and Plaintiff was found not disabled as of November 17, 2010. (*Id.* at 223.)  According to Defendant, Plaintiff did not appeal the decision. (Def.'s Mem. at 1.)  Plaintiff has an associate degree in liberal arts; he completed this program in six years with a 2.2 GPA. (Tr. at 127–28.)

On April 21, 2015, Plaintiff applied for Supplemental Security Income ("SSI"), alleging disability beginning May 1, 2011 (the "Alleged Onset Date"). (Tr. at 383.)  His SSI claim was denied on August 17, 2015. (*Id.* at 260–62.)  Thereafter, Plaintiff appealed and testified before an ALJ on November 27, 2017. (*Id.* at 118–79.)  Plaintiff and his father, Mikhail Yaroslavskiy, appeared at the hearing and testified, as did medical expert Chukwuemeka Efobi and vocational expert Michael Smith. (*Id.*)  The ALJ issued a decision on January 6, 2018, finding Plaintiff not disabled. (*Id.* at 233–48.)  Plaintiff appealed, and the Appeals Council reversed the ALJ's decision and remanded for further proceedings. (*Id.* at 249–52.)  Specifically, the Appeals Counsel found:

- The ALJ's decision did not contain an adequate evaluation of the treating and non-treating source opinions and did not give a weight to these opinions.

- The ALJ's decision does not contain an adequate assessment of claimant's maximum RFC.

(*Id.*)

A second hearing was held on September 20, 2019. (*Id.* at 183–220.)  At both hearings, Plaintiff testified with respect to his ability to perform daily tasks.  For example, Plaintiff

testified that he takes a while to tie his shoes. (*Id.* at 143.) At the second hearing, Plaintiff explained that, while associates programs often take people two years to complete, it took Plaintiff six years to complete because he had to repeat classes. (*Id.* at 194.) Additionally, Plaintiff struggled to understand questions during the proceedings, and his dad intervened on numerous occasions to tell the parties that his son was confused. (*Id.* at 148–49.) Plaintiff further testified that his dad helped him get dressed for the proceedings. (*Id.* at 195–96.)

    II.   **Medical Evidence Offered**

        A.  **IQ Tests**

As a child, Plaintiff suffered from seizures and developmental delay. (*Id.* at 510–11.) In 2003, Plaintiff had a verbal IQ of 80 and a performance IQ of 64, placing him at the second percentile as compared to other children. (*Id.* at 546.) In 2016, Plaintiff received an IQ score of 74, which placed him "within the borderline range of ability" at approximately the 4th percentile for his age. (*Id.* at 726.) Further, in 2017, Plaintiff underwent a vocational readiness assessment, that showed his reading abilities to be at a grade 4.1, math at a grade 6, and his typing speed to be nine words per minute. (*Id.* at 803–06.)

On September 4, 2017, Dr. Igor Davidson determined that Plaintiff had an IQ of 85, with Plaintiff's overall intelligence being classified as low average and in the 16th percentile; his non-verbal abilities were in the 10th percentile, and his verbal abilities were in the 5th percentile. (*Id.* at 774.) In June and July 2019, Plaintiff underwent another psychological evaluation by Dr. Herzberg. (*Id.* at 817.) He received an IQ score of 66, within the mild intellectual disability range and placing him in the 1st percentile. (*Id.* at 819.)

### B. Dr. Amy Theobald, Psy. D.

Dr. Theobald examined Plaintiff on July 2, 2015, as a consulting physician. She reviewed his medical history and performed a psychiatric evaluation. Dr. Theobald opined that Plaintiff "has moderation limitation in his ability to follow and understand simple directions and instructions and performs simple tasks independently. He has moderate limitation in his ability to maintain attention and concentration." (Tr. at 700.) Dr. Theobald found that Plaintiff would need assistance managing his funds and would benefit from full neuropsychiatric testing and vocational training. (*Id.* at 700–01.) Dr. Theobald further stated that Plaintiff has difficulties that "are caused by possible cognitive deficits" and that the results of her exam "appear to be consistent with cognitive problems [that] may significantly interfere with [Plaintiff's] ability to function on a daily basis." (*Id.* at 700.) However, Dr. Theobald, in conclusory fashion, ruled out as diagnoses intellectual disability, specific learning disorder, and unspecified anxiety disorder. (*Id.*)

### C. Dr. Ruby Phillips, PhD

Dr. Phillips examined Plaintiff on September 10, 2017, as a consulting physician. Dr. Phillips reviewed Plaintiff's medical history and performed a psychiatric evaluation. Dr. Phillips noted that Plaintiff's insight and judgment were poor and that his "intellectual functioning was in the borderline range." (*Id.* at 704.) Dr. Phillips noted that Plaintiff was mildly limited in his ability to understand, remember, or apply simple directions and instructions; moderately limited in his ability to understand, remember, or apply complex directions and instructions; and markedly limited in his ability to use reason and judgment to make work-related decisions. (*Id.*) Further, Dr. Phillips noted that Plaintiff is mildly limited to his ability to interact with others,

4

moderately limited in his ability to control his behaviors and regulate his emotions. (*Id.*) She diagnosed Plaintiff with borderline intellectual functioning and developmental delay; she ruled out social anxiety disorder. (*Id.* at 705.) She stated that the expected duration of his impairment was indefinite and that he will need assistance to manage his funds. (*Id.*)

### D. Dr. M. Graff, PhD

On July 29, 2015, some of Plaintiff's medical records and his SSA case file were reviewed by state agency consultant M. Graff, Ph.D. (*Id.* at 228–30). Dr. Graff commented that Plaintiff lived in a bilingual household, speaking both English and Russian. (*Id.* at 230). Dr. Graff, in considering Plaintiff's capabilities—including his abilities to take public transportation unaccompanied, graduate high school, and attend college, stated that "[t]he totality of the medical evidence does not reflect an intellectual disability." (*Id.*) Dr. Graff opined that Plaintiff may have some learning issues and self-direction issues impairing functioning, but "not to the extent that competitive functioning is precluded." (*Id.*) Dr. Graff further opined that "[Plaintiff] has the capabilities to sustain attention and concentration, interact appropriately w[ith] others, and adapt to changes in the environment." (*Id.*)

However, Dr. Graff noted that he had requested and not yet received 14 different medical records from Plaintiff's medical history. (*Id.* at 225.)

### E. Dr. Igor Davidson, PhD

On September 4, 2017, Dr. Davidson determined that Plaintiff had an IQ of 85, with his overall intelligence being classified as low average and in the 16th percentile; his non-verbal abilities were in the 10th percentile, and his verbal abilities were in the 5th percentile. (*Id.* at 774.) Dr. Davidson determined that Plaintiff "has mild-moderate intellectual delay in

5

development, [] has a lifetime of special education supports" and would "be unable to self-initiate training and secure gainful employment on his own." (*Id.* at 775.)

### F.  Dr. Chulwuemeka Efobi

Dr. Efobi testified at Plaintiff's first administrative hearing after reviewing the record but was not a treating physician. (*Id.* at 20, 154.) At the hearing, Dr. Efobi noted the following possible diagnoses for Plaintiff: "[inaudible] mental disorder, [inaudible] unspecified depressive disorder, . . . intellectual disability, most likely borderline intellectual disability, but there is a possibility there might be mild intellectual disability.  Then there is a personal [inaudible] anxiety disorder or a social anxiety." (*Id.* at 154.) Dr. Efobi testified that Plaintiff likely had a mild intellectual disability.  Further, pointing to the fact that Plaintiff was able to earn an associate's degree, Dr. Efobi concluded that Plaintiff should be able to do a simple task job that was "minimal" and that he could interact appropriately with others. (*Id.* at 158.)

### G.  Dr. Olin Hamrick

Dr. Hamrick testified at Plaintiff's 2019 hearing. (*Id.* 198–210.) Specifically, Dr. Hamrick testified that Plaintiff: "would be able to perform simple, routine, repetitive, unskilled tasks with no more than occasional contact with the public. No more than occasional contact with supervisors and co-workers as necessary in a simple, unskilled task situation. No more than occasional requirement to adapt to changes and [he] would suggest that changes should be initiated gradually and there should be time allowed to learn new tasks or to adapt to changes within a week or two of time to deal with changes[.]" (*Id.* at 199.)

6

\*   \*   \*

By decision dated November 6, 2019, the ALJ found that Plaintiff had the residual function capacity ("RFC") to perform light work (with limitations) and could perform jobs available in the national economy. (*Id*. at 16.) Accordingly, the ALJ determined that Plaintiff was not disabled.

## STANDARD OF REVIEW

Under the Social Security Act, a disability Plaintiff may seek judicial review of the Commissioner's decision to deny his application for benefits. 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Felder v. Astrue*, No. 10-cv-5747, 2012 WL 3993594, at \*8 (E.D.N.Y. Sept. 11, 2012). In conducting such a review, the Court is tasked only with determining whether the Commissioner's decision is based upon correct legal standards and supported by substantial evidence. 42 U.S.C. § 405(g); *see also Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)).

The substantial-evidence standard does not require that the Commissioner's decision be supported by a preponderance of the evidence. *See Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982) ("[A] factual issue in a benefits proceeding need not be resolved in accordance with the preponderance of the evidence . . ."). Instead, the Commissioner's decision need only be supported by "more than a mere scintilla" of evidence and by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148 (2019). In deciding whether substantial evidence supports the Commissioner's findings, the Court must examine the entire record and consider all evidence that could either support or contradict the Commissioner's determination. *See Jones ex rel. Tr.J. v. Astrue*, No. 07-cv-4886, 2010 WL 1049283, at \*4 (E.D.N.Y. Mar. 17, 2010) (citing *Snell v. Apfel*, 171 F.3d

128, 132 (2d Cir. 1999)), *aff'd sub nom. Jones ex rel. Jones v. Comm'r of Soc. Sec.*, 432 F. App'x 23 (2d Cir. 2011).  Still, the Court must defer to the Commissioner's conclusions regarding the weight of conflicting evidence.  *See Cage v. Comm'r of Social Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) (citing *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998)).

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.  *See Ortiz v. Comm'r of Soc. Sec.*, No. 15-CV-3966, 2016 WL 3264162, at *3 (E.D.N.Y. June 14, 2016) (citing 42 U.S.C. § 405(g)).  Indeed, if supported by substantial evidence, the Commissioner's findings must be sustained, even if substantial evidence could support a contrary conclusion or where the Court's independent analysis might differ from the Commissioner's.  *See Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982)); *Anderson v. Sullivan*, 725 F. Supp. 704, 706 (W.D.N.Y. 1989); *Spena v. Heckler*, 587 F. Supp. 1279, 1282 (S.D.N.Y. 1984).

## DISCUSSION

Plaintiff argues on appeal that the ALJ gave improper weight to non-treating physicians, the ALJ's RFC determination was inconsistent with medical opinions he found persuasive, and the ALJ did not adequately communicate Plaintiff's limitations to the vocational expert.  As explained below, the Court agrees with Plaintiff on these grounds.  Accordingly, the Court need not decide Plaintiff's final argument concerning the reliability of the vocational expert's testimony.

### I.     Whether the ALJ Gave Drs. Efobi and Hamlin's Opinions Improper Weight

Plaintiff contends the ALJ improperly assigned "good" weight to the opinions of Dr. Efobi and Dr. Hamlin, who never met with Plaintiff and whose involvement with Plaintiff's case was limited to appearing telephonically for Plaintiff's hearings.  The Court agrees.

8

According to the opinion, the ALJ afforded Drs. Efobi and Hamlin's opinions "good" weight only because they "supported their testimony with specific citations to the record and because their diagnoses, findings, and limitations are supported by the evidence[.]" (Tr. at 20.) However, these doctors did not submit written opinions to be supported by specific citations to the record. And, they did not examine Plaintiff. Thus, their testimony cannot constitute "substantial evidence" in support of the ALJ's determinations. *See, e.g.*, *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (noting instances when courts have chosen not to find evidence substantial, such as "where the expert was a consulting physician who did not examine the claimant and relied entirely on an evaluation by a non-physician reporting inconsistent results"). This is particularly so because intellectual disabilities, like Plaintiff experiences here, are difficult to assess through medical records alone. *See, e.g.*, *Velazquez v. Barnhart*, 518 F. Supp. 2d 520, 524 (W.D.N.Y. 2007) ("in the context of a psychiatric evaluation, an opinion based on personal examination is inherently more reliable than an opinion based on the observation of the patient while giving his testimony and the review of opinions given by his treating and reviewing physicians"); *Perry v. Comm'n*, 2020 WL 1550583, at *5 (E.D.N.Y. March 31, 2020) (an ALJ's "sole reliance" on "fact that the non-examining medical expert's opinion was consistent with the record" was "particularly problematic because the disability at issue is a mental impairment")

Accordingly, Plaintiff's motion for judgment on the pleadings is granted on this ground.

## II. Whether the ALJ's RFC Determination is Inconsistent with Drs. Theobald and Phillips' opinions

Plaintiff argues that the ALJ failed to adequately consider Drs. Theobald and Phillips' opinions regarding Plaintiff's ability to follow instruction when forming an RFC. (Pl.'s Mem. at 11.) Here again, the Court agrees.

As Plaintiff correctly points out, contrary to the ALJ's RFC determination, both doctors identified limitations in Plaintiff's ability to follow simple instructions. Indeed, Dr. Phillips identified limitations in Plaintiff's ability to make judgments on simple decisions. The ALJ does not address these opinions by Drs. Theobald and Phillips, which appear to be consistent with a finding of disability, when he determined that Plaintiff is able to follow simple tasks. Nor does the ALJ—as Defendant suggests—explain which portions of their opinions should not be given persuasive weight. Indeed, in forming an RFC, the ALJ does no more than summarize Plaintiff's medical history with little to no analysis as to why the evidence consistent with a finding of disability should be disregarded. While an ALJ is not required to explicitly analyze every piece of conflicting evidence in the record, *see, e.g.*, *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony), an ALJ cannot simply "'pick and choose' evidence in the record that supports [her] conclusions," *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004). That is what the ALJ did here. Accordingly, Plaintiff's motion is granted on this ground.

### III. Whether the ALJ's Failed to Communicate Plaintiff's Limitations to the Vocational Experts

"At Step Five, the Commissioner must determine that significant numbers of jobs exist in the national economy that the claimant can perform." *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014). "An ALJ may make this determination either by applying the Medical Vocational Guidelines or by adducing testimony of a vocational expert." *Id.* A "vocational expert's testimony is only useful if it addresses whether the particular claimant, with his limitations and

10

capabilities, can realistically perform a particular job." *Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981).

Here, Plaintiff asserts that the ALJ's hypothetical questions posed to vocational expert Christina Boardman in the 2019 hearing did not include the limitations found by Dr. Phillips and Dr. Theobald. Specifically, Plaintiff contends that the ALJ's questioning did not take into account Plaintiff's moderate limitations in maintaining attention and concentration, maintaining a regular schedule, learning new tasks, or dealing with stress. (Pl.'s Mem. at 16.) Here again, the Court agrees.

The ALJ asked the vocational expert the following questions regarding how often the jobs require interacting with others:

> "- - take a hypothetical person the claimant's age and vocational background who is limited to a simple task instruction job. Light work, occasional postural and at most, occasional contact with supervisors, co-workers, and the public. Are there jobs?" (Tr. at 211.)
>
> "I just want to be clear on this hypothetical. The no more than occasional ability to adapt to changes in the workplace. The person would be able to do these jobs?" (*Id.* at 212.)
>
> "Now, if the individual had – could only occasionally perform simple and routine tasks, they wouldn't be able to perform these jobs, is that correct?" (*Id.* at 214.)

The Second Circuit has noted that "an ALJ's hypothetical should explicitly incorporate any limitations in concentration, persistence, and pace." *McIntyre*, 758 F.3d at 152. However, "an ALJ's failure to incorporate non-exertional limitations in a hypothetical (that is otherwise supported by evidence in the record) is harmless error if (1) medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, and the challenged hypothetical is limited to include only

11

unskilled work; or (2) the hypothetical otherwise implicitly account[ed] for a claimant's limitations in concentration, persistence, and pace[.]" *Id.* (citation and quotations omitted).

As Plaintiff correctly points out, the ALJ did not inquire into limitations on Plaintiff's ability to concentrate. Dr. Theobald, whose opinion the ALJ credits with moderate weight, determined, among other things, that Plaintiff experienced moderate limitations in his ability to maintain attention and concentration. (Tr. at 700.) Further, Dr. Phillips concluded that Plaintiff had mild limitations in his ability to follow instructions and marked limitation in the ability to use reason and judgment to make decisions. In sum, Dr. Theobald's opinion demonstrates that Plaintiff might struggle to perform simple tasks given his limitations. Dr. Phillips reached similar conclusions. Accordingly, he ALJ erred in not inquiring as to these limitations when making the RFC determination. Plaintiff's motion is thus granted.

## CONCLUSION

For the reasons set forth above, Plaintiff's motion for judgment on the pleadings is GRANTED, and Defendant's cross-motion for judgment on the pleadings is DENIED. The case is REMANDED for further proceedings consistent with this memorandum and order.

SO ORDERED.

Dated: Brooklyn, New York  /s/ LDH
      September 26, 2022  LaSHANN DeARCY HALL
                                                 United States District Judge